Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| DAMARIS RIVERA ORTIZ Y/O JOSÉ MANUEL MARTÍNEZ RIVERA<br><br>Recurrentes<br><br>v.<br><br>CONSEJO DE TITULARES DEL CONDOMINIO OCEANÍA<br><br>Recurrido | KLRA202500244 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos del Consumidor<br><br>Querella número: C-ARE-2023-0005730<br><br>Sobre: Ley de Condominios de Puerto Rico |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 26 de agosto de 2025.

Comparece la parte recurrente, Damaris Rivera Ortiz y José Manuel Martínez Rivera, mediante un recurso de revisión judicial y nos solicita que revoquemos la *Resolución* emitida el 20 de febrero de 2025, notificada el 21 del mismo mes y año, por el Departamento de Asuntos del Consumidor (DACO).[1] Mediante el referido dictamen, el DACO declaró No Ha Lugar la *Querella* presentada por los recurrentes.

Por los fundamentos que expondremos a continuación, se confirma la Resolución recurrida. Veamos.

## I.

El 29 de agosto de 2023, Damaris Rivera Ortiz y José Manuel Martínez Rivera (recurrentes) presentaron una *Querella* ante el DACO.[2] Alegaron que el 29 de julio de 2023, se celebró una Asamblea Extraordinaria por parte del Consejo de Titulares del

---

[1] Apéndice del recurso, Anejo 1.
[2] *Íd.*, Anejo 2.

Condominio Oceanía (el Consejo o recurrido) para llevar a votación varios asuntos propuestos previamente. Arguyó que, entre los temas a discutirse en la Asamblea estarían, la remodelación del cuarto de máquinas para reservar un área para oficina y equipos, la adquisición de una planta eléctrica para energizar los elementos comunes, la compra de sillas y mesas para el área de la piscina, la construcción de una verja que cubriera la zona de la piscina y una derrama para sufragar las referidas propuestas. Argumentó que, la mayoría de los titulares aprobaron el cambio de destino del cuarto de máquinas para convertirlo en una oficina. Por otro lado, sostuvo que, fue aprobada por la mayoría de los titulares, la compra e instalación del generador eléctrico. Asimismo, aludió que, fue validado por votación mayoritaria, la compra de sillas y mesas y la construcción de la verja aledaña al área de la piscina. En cuanto a la derrama, la recurrente indicó que, esta fue aprobada por los titulares.

Así pues, la recurrente indicó que, las propuestas aprobadas no contaron con el aval de votos establecidos en la Ley de Condominios de Puerto Rico, Ley Núm. 129-2020, según enmendada, 31 LPRA sec. 1921 (Ley de Condominios) *et. seq.* En cuanto al cambio de destino del cuarto de máquinas, adquisición de la planta eléctrica y la remodelación de la verja, sostuvo que, debió ser aprobada de manera unánime y no por mayoría. Ello, pues resulta en un cambio de fachada y del destino de los elementos comunes. Por otro lado, la parte recurrente solicitó que, el DACO ordenara la paralización de la derrama hasta tanto el foro administrativo revisara si los asuntos aprobados en la asamblea fueron conforme a la Ley de Condominios, *supra.*

Por su parte, la recurrida instó una *Contestación a la querella, solicitud de desestimación por falta de jurisdicción sobre la materia*

en la que solicitó que, el DACO desestimara la *Querella*.[3] Arguyó que, la recurrente no acreditó la ausencia de deudas ante el Consejo para incoar la presente causa de acción. Indicó que, en la Asamblea los titulares estuvieron de acuerdo en reservar un espacio para oficina en el cuarto de máquinas. Adujo, además, que contrario a lo alegado por la parte recurrente, el Consejo no alteró el destino del cuarto de máquinas. Argumentó que, el generador fue aprobado con los votos necesarios, tal como lo establece la Ley de Condominios. Además, arguyó que la remodelación de la verja no necesitaba la autorización del Consejo debido a que era para arreglarla ante su deterioro. Por ende, suplicó la desestimación de la *Querella.*

Tras varios trámites procesales, el 15 de julio de 2024, la parte recurrente instó una moción en la que le solicitó al DACO que señalara una vista administrativa.[4]

El 2 de octubre de 2024, el DACO celebró una vista administrativa a la que comparecieron las partes representadas por sus abogados, así como dos testigos. Además, le ordenó a las partes que presentaran sus memorandos de derecho en aras de sustentar las solicitudes de los remedios solicitados.[5]

En cumplimiento de lo anterior, ambas partes presentaron sus respectivos memorandos de derecho.

Así las cosas, el 21 de febrero de 2025, el DACO emitió una *Resolución[6]* en la que formuló las siguientes determinaciones de hechos:

1. Los esposos querellantes Damaris Rivera y José M. Martínez son titulares del apartamento residencial D-302 del Condominio Oceanía.

2. El Condominio Oceanía está localizado en Arecibo, Puerto Rico, y está ubicado en un área cercana o frente al mar. El mismo consta de 60 apartamentos.

---

[3] Apéndice del recurso, Anejo 3.
[4] *Véase* el Expediente administrativo del DACO.
[5] Apéndice del recurso, Anejo 1.
[6] *Íd.*

3. No existe controversia en cuanto a que el Condominio Oceanía se encuentra sometido al Régimen de Propiedad Horizontal.

4. No se presentó evidencia de la escritura matriz del Condominio Oceanía.

5. Mediante convocatoria con fecha del 21 de junio de 2023 la Junta de Directores del condominio convocó al Consejo de Titulares del Condominio Oceanía a una asamblea extraordinaria. La misma se convocó para el 29 de julio de 2023. Conforme dicha convocatoria, parte de la agenda a discutirse era la informada en el inciso 6 que dispone así:

> 6. Presentación y ratificación de la derrama, su término y condiciones de pago por la cantidad de $420,000.00 para los siguientes proyectos:
>
> > A. Escarificación, asfaltado del estacionamiento, encintados y rotulación de estacionamientos, e instalación de (Wheel stops) topes de rueda en cemento.
> > B. Adquisición e instalación de planta eléctrica para todas las áreas comunes en Oceanía.
> > C. Adquisición e instalación de cargadores de vehículos eléctricos.
> > D. Rediseño y construcción de verja del frente de Oceanía en bloques cemento.
> > E. Reparación completa de la verja posterior de Oceanía con instalación de serpentinas.
> > F. Instalación de sistema de cámaras de seguridad y monitoreo.
> > G. Reparación y compra de motores de piscina en sistema de sal.
> > H. Adquisición e instalación de equipo para área de juego de niños.
> > I. Reparación de verja, pintura y compra de canasto para la cancha.
> > J. Reparación y limpieza de área de golfito.
> > K. Compra de sillas y mesas para la piscina, gazebo y áreas comunes.
> > L. Adquisición e instalación de focos solares para parte posterior.
> > M. Remodelación de cuarto de máquina para uso de oficina y equipos.
> > N. Reemplazo y rediseño de la verja que cubre áreas de la piscina y gazebo.
>
> 6. El 29 de julio de 2023 se celebró la asamblea extraordinaria del Consejo de Titulares del Condominio Oceanía. La misma contó con la asistencia de 40 titulares, de los cuales algunos comparecieron mediante proxy.
>
> 7. La querellante Damaris Rivera asistió a la asamblea del 29 de julio de 2023.
>
> 8. Los proyectos presentados en la convocatoria fueron ratificados por unanimidad de los presentes en la asamblea excepto dos: el proyecto sobre remodelación del cuarto de máquinas para uso de oficina y equipos y el proyecto sobre reemplazo y rediseño de la verja que cubre áreas de piscina y gazebo que se aprobaron por la mayoría de los presentes.
>
> Durante la asamblea se discutió la alternativa de remover la verja de la piscina en vez de sustituirla, lo cual fue aprobado por la mayoría.

9. Durante la asamblea celebrada la querellante se opuso a la aprobación del proyecto sobre remodelación del cuarto de máquinas para uso de oficina y equipos. También se opuso al reemplazo y rediseño de la verja que cubra áreas de la piscina.

La querellante estuvo de acuerdo con la adquisición de un generador eléctrico para el condominio.

La querellante no votó en contra de la propuesta de rediseño y construcción de verja del frente de Oceanía en bloques de cemento. No existe evidencia ni la parte querellante demostró lo contrario.

La querellante no votó en contra de la derrama presentada. No existe evidencia ni la parte querellante demostró lo contrario.

10. Posteriormente se emitió la minuta de la asamblea realizada el 29 de julio de 2023. La querellante recibió copia de la minuta y no objetó la misma. Ésta no presentó queja alguna sobre la minuta. No existe evidencia ni la parte querellante demostró lo contrario.

11. El cuarto de máquinas *ubica* en el área de la plazoleta donde está el gazebo y la piscina del condominio, Dicha área queda retirada de los edificios de los apartamentos del condominio.

La Junta de Directores removió las máquinas (motores) de la piscina del cuarto de máquinas y las colocó dentro de un cajón de metal que ubicó justo al lado del cuarto de máquinas.

Actualmente el cuarto de máquinas sirve de almacén donde hay productos y equipos de limpieza, equipo de oficina de administración, mesas sillas, artefactos, neveritas pintura, tormenteras, entre otros.

Previo la remoción de los motores de la piscina del cuarto de máquinas, o sea cuando los motores de la piscina se ubicaban en el cuarto de máquinas, también se guardaba equipo de limpieza y de oficina en el cuarto de máquinas

12. No existe evidencia ni la parte querellante demostró fehacientemente que el uso que se le da al cuarto de máquinas difiere del uso que se le daba previo a la reubicación de los motores de la piscina ni evidencia del propósito de existencia de dicho cuarto de máquinas.

No existe evidencia de la escritura matriz del condominio que establezca el destino y uso de dicho cuarto en el condominio. Tampoco existe evidencia de reglamento alguno del condominio.

13. El cuarto de máquinas continúa teniendo la misma infraestructura eléctrica y mecánica. El mismo no se deshizo ni se cambió de lugar, solo se reubicó una maquinaria que ubicaba dentro para colocarla justo al lado de dicho cuarto.

14. La instalación del generador eléctrico se hizo justo al lado del cuarto de máquinas. La querellante estuvo de acuerdo con la adquisición del generador pero se opuso a que su instalación se realizara en dicha área alegando que le cambiaba la fachada al condominio.

15. Antes de ubicar el generador eléctrico justo al lado del cuarto de máquinas, la Junta de Directores consultó con un perito ingeniero electricista y con un ingeniero ambiental sobre el lugar más idóneo y apto para su ubicación dentro del condominio. Se tomó en consideración que el área del cuarto de máquinas queda

retirada de los apartamentos mientras las demás áreas a considerar dentro del condominio quedan cercanas a los apartamentos. Además, se consideró que el cuarto de máquinas cuenta con los paneles eléctricos y/u otros mecanismos necesarios para el funcionamiento del generador.

Se solicitó el permiso para el generador eléctrico en la Oficina de Gerencia de Permisos, el Departamento de Recursos Naturales y la Junta de Calidad Ambiental. El permiso fue emitido favorablemente para el generador en el condominio bajo la determinación de cumplimiento ambiental número 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.

16. En cuanto a la verja de la piscina la misma era de tubo galvanizado. A la fecha de la asamblea celebrada, dicha verja se encontraba deteriorada en un estado grave de corrosión. Por eso fue uno de los proyectos a considerar ante la preocupación de que la verja representaba una amenaza a la vida y seguridad de las personas si la misma caía o se desprendía de sus bases.

Posterior a que durante la asamblea se aprobó por mayoría la remoción de la verja de la piscina en vez de sustituirla, dicha verja fue removida y no se ha vuelto a instalar nada en su lugar.

17. No existe evidencia ni la parte querellante demostró que la verja que tenía la piscina era parte de la infraestructura original del condominio cuando se construyó el mismo o que formó parte de los planos del condominio. Tampoco existe evidencia que figura como elemento común en la escritura matriz del condominio.

18. En cuanto a la verja del frente del condominio, la verja perimetral era de metal o tubo galvanizado color verde, construida sobre columnas. A la fecha de la asamblea celebrada, dicha verja se encontraba muy deteriorada por la corrosión y estaba desprendida en varias partes. Por eso fue uno de los proyectos a considerar ante la preocupación de que dicha verja representaba un asunto serio de seguridad.

Durante la asamblea se discutieron los distintos materiales para sustituir la verja, siendo el bloque la opción más económica, segura y con mayor durabilidad. Posterior a la aprobación del proyecto durante la asamblea celebrada, se sustituyó dicha verja por una en bloques. Solo se sustituyó el material de tubo galvanizado por bloques ya que la zapata, zanja y columnas permanecier[o]n.

19. El 29 de agosto de 2023 las querellantes presentaron en el DACO la querella de epígrafe, cuya radicación mediante el sistema electrónico de querellas se procesó el 20 de septiembre de 2023. Éstos impugnaron algunos de los proyectos aprobados por el Consejo de Titulares. Las reclamaciones de las querellantes fueron, en síntesis, las siguientes:

-Primera causa de acción:
- que se aprobó un cambio en el destino del cuarto de máquinas para uso de oficina y equipos por votación de mayoría cuando debió ser por votación unánime ya que se trataba de un cambio en el destino de un elemento común.

-Segunda causa de acción:
- que la instalación del generador eléctrico en el lugar en que se ubicó requería la votación de 2/3 partes de los titulares porque altera la fachada

-Tercera causa de acción:
- que la propuesta de la compra de sillas y mesas para piscina, gazebo y áreas comunes resulta una mejora y requería la aprobación por la totalidad de los titulares del condominio
- que el proyecto de reemplazo y rediseño de la verja de la piscina requería aprobación unánime del Consejo de Titulares toda vez que la verja fue eliminada y ello constituye cambio de fachada
- que el rediseño y construcción de verja del frente de Oceanía en bloques de cemento reque[ría] aprobación por unanimidad por ser una obra que afecta la fachada
- que la propuesta de adquisición e instalación de cargadores de vehículos eléctricos requería aprobación por unanimidad del Consejo de Titulares ya que la instalación en los estacionamientos de visitantes constituiría un cambio en el destino de los estacionamientos

-Cuarta causa de acción:
- impugna la derrama que se aprobó para costear los proyectos alegando: 1) que las obras que la derrama va a costear fueron aprobadas ilegalmente y 2) que la Junta de Directores determinó que el pago de la derrama se empezaba a pagar en agosto de 2023 y acumularía recargos e intereses a partir del 1 de septiembre de 2023 de no cumplir con el pago mensual aprobado

20. Al momento de la presentación de le querella, los querellantes no tenían deuda con el Consejo de Titulares del condominio

21. A la fecha de la vista administrativa la querellante se encontraba al día en los pagos de la derrama aprobada por el Consejo de Titulares.

22. No existe evidencia ni la parte querellante demostró la alegación en la querelle de que la Junta de Directores determinó imponer recargos e intereses por cuotas de derrama vencidas.

23. La Junta de Directores y/o Consejo de Titulares del Condominio Oceanía no está cobrando recargos, intereses y/o penalidad por concepto de cuotas de la derrame aprobada.

24. Durante la vista administrativa la parte querellante manifestó que desistía de las reclamaciones de los siguientes dos proyectos impugnados en la querella bajo su tercera causa de acción: 1) compra de sillas y mesas para piscina, gazebo y áreas comunes y 2) adquisición e instalación de cargadores de vehículos eléctricos.

El DACO resolvió que la recurrente no pudo presentar la totalidad de la escritura matriz del condominio, por lo que no demostró que el Condominio fuera sometido al régimen de propiedad

horizontal, previo a la aprobación de la Ley de Condominios, supra. Esto a los fines de establecer que le aplica el requisito de unanimidad en casos de variaciones de destino y uso de las áreas comunes. Además, la agencia administrativa sostuvo que, ante la falta de dicha prueba, no se pudo demostrar qué establece la escritura matriz, si algo, en cuanto al destino y uso del cuarto de máquinas. Por tanto, el DACO determinó que la parte recurrente no logró demostrar que hubo una alteración en el destino del cuarto de máquinas. En esa línea, el DACO determinó que, el cuarto de máquinas continuó teniendo el mismo uso, salvo que los titulares aprobaron dedicar un espacio para una oficina.

En cuanto al generador eléctrico, el DACO decretó que, la recurrente no logró acreditar que este constituyó un cambio en la fachada. En su defecto, el DACO determinó que, de la prueba presentada surge que el proyecto de la adquisición del generador eléctrico fue aprobado unánimemente por todos los titulares presentes el día de la asamblea. Más aún, determinó que un generador eléctrico es una obra necesaria que se aprueba por el Consejo de Titulares por mayoría simple.

En cuanto a la remoción de la verja en el área de la piscina y la construcción en bloques de la verja frente al condominio, el DACO resolvió que eran unas obras necesarias y que fueron aprobadas con los votos requeridos por la Ley de Condominios, supra. Señaló, además, que la parte recurrente estuvo presente en la asamblea y no objetó la construcción de la verja en bloques de cemento ni votó en contra de la derrama. Tampoco impugnó u objetó la Minuta de la asamblea. Por tanto, no podía impugnar posteriormente la construcción de esta.

En virtud de lo antes expuesto, el DACO desestimó la *Querella* presentada por la parte recurrente.

Insatisfecha, el 13 de marzo de 2025, la recurrente presentó una *Moción de Reconsideración* ante el DACO. Sin embargo, la reconsideración no fue atendida por la agencia administrativa.

Inconforme, el 28 de abril de 2025, la parte recurrente acudió ante nos mediante el recurso de *Revisión Judicial* y esbozó los siguientes señalamientos de error:

Primer Error: Erró el DACO al resolver que la parte querellante no estableció que el Condominio Oceanía está sujeto al Régimen de la Propiedad Horizontal a pesar de que la parte querellada había admitido dicho hecho en su Contestación a la Querella.

Segundo Error: Erró el DACO al no admitir la porción presentada por la querellante de la Escritura Matriz del Condominio, la cual define el "Cuarto de Máquinas" como un elemento común del Condominio, cuando dicho hecho había sido admitido por la querellada-recurrida en su Contestación a la Querella.

Tercer Error: Erró el DACO al determinar que no le aplica el umbral de unanimidad a la votación del Consejo para cambiar el destino del "cuarto de máquinas" del Condominio.

Cuarto Error: Erró el DACO al concluir sin evidencia para ello que el Consejo de Titulares descargó adecuadamente su obligación de evaluar la instalación del generador eléctrico adquirido basado en que la Junta de Directores consultó un ingeniero ambiental previo a dicha instalación.

Quinto Error: Erró el DACO al concluir que la remoción de la verja perimetral de la piscina y el cambio en los materiales de construcción y diseño de la verja perimetral del Condominio Oceanía no constituyó un cambio de fachada.

Sexto error: Erró el DACO al concluir que se cumplieron los umbrales de votación establecidos por la Ley de Condominios de Puerto Rico del 16 de agosto de 2020, para mejoras a los elementos comunes según establecido.

S[é]ptimo Error: Err[ó] el DACO al determinar que la derrama impuesta a los titulares en la Asamblea celebrada el 29 de julio de 2023 fue aprobada conforme los umbrales de votación correctos en consideración a que las obras que serán pagadas con los fondos provenientes de la derrama.

En cumplimiento con nuestra *Resolución*, el 7 de julio de 2025, el Consejo presentó un *Alegato de la parte recurrida*.

Con el beneficio de la comparecencia de las partes, así como con la copia certificada del expediente administrativo, nos disponemos a resolver el recurso que nos ocupa.

## II.

## A.

Sabido es que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Otero Rivera v. Bella Retail Group, Inc. y otros*, 2024 TSPR 70; *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Transporte Sonnell, LLC v. Junta de Subastas de la Autoridad de Carreteras y Transportación de Puerto Rico y otro*, 2024 TSPR 82; *Otero Rivera v. Bella Retail Group, Inc. y otros*, *supra*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). No obstante, tal norma no es absoluta. Es por ello que nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 2024 TSPR 29, 213 DPR ___ (2023).

En *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando

determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Íd.* Véase, además, *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, *supra*, y *Super Asphalt v. AFI y otro*, supra, pág. 819.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*

Bajo este supuesto, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9675 (LPAU), estableció "el marco de revisión judicial de las determinaciones de las agencias administrativas". *Otero Rivera v. Bella Retail Group, Inc. y otros*, *supra*; *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.,* págs. 35-36; *OEG v. Martínez Giraud*, supra; *Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Batista, Nobbe v. Jta. Directores*, supra, pág. 217. Nuestro Máximo Foro ha expresado que esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía,* supra, pág. 36. Siendo así, aquellas determinaciones de hechos

formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd.; OEG v. Martínez Giraud,* supra; *Super Asphalt v. AFI y otro,* supra.

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Rolón Martínez v. Supte. Policía,* supra, pág. 36; *Torres Rivera v. Policía de PR,* supra, pág. 627. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Íd.*

El Tribunal Supremo de Puerto Rico ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales". *Torres Rivera v. Policía de PR,* supra, págs. 627-628; *OEG v. Martínez Giraud,* supra. Finalmente, nuestra más Alta Curia ha expresado que, conforme a lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *OEG v. Martínez Giraud,* supra, pág. 11.

**B.**

El Art. 2 de la Ley de Condominios, 31 LPRA sec. 1921a, establece que, la ley se aprobó con el propósito, entre otros, de viabilizar la propiedad individual sobre un apartamento, que forma

parte de un edificio o inmueble sometido al Régimen de Propiedad Horizontal. La Ley de Condominios provee mecanismos para los conflictos inevitables que surgen del *modus vivendi* bajo un régimen de propiedad horizontal. *Srio. D.A.C.O.* v. *J. Condóminos C. Martí*, 121 DPR 807, 814 (1988). Asimismo, otro propósito que tiene la ley es la creación de un marco organizacional de un gobierno interno y canalizar los problemas de la vida comunitaria. *Íd.*, pág. 815. La ley detalla el marco organizacional del gobierno interno, cuyo organismo rector y deliberativo es el Consejo de Titulares que a su vez rige, según la Ley de Propiedad Horizontal, la escritura matriz y el reglamento. *Íd.*

La facultad del DACO para adjudicar querellas relacionadas con acciones de impugnación presentadas por titulares de un condominio en el que haya al menos una unidad destinada a vivienda, emana de la Ley de Condominios. En virtud del Artículo 65 del referido estatuto, 31 LPRA sec. 1923j, los titulares pueden impugnar ante el DACO acuerdos, omisiones, o actuaciones de la Junta de Directores, del administrador interino, del presidente y del secretario, concernientes a la administración del inmueble, cuando estos le sean perjudiciales al titular o a la comunidad, o que sean contrarios a la ley, escritura de constitución o reglamento del condominio. Según dispone el citado articulado, para todo tipo de impugnación se tendrán treinta (30) días, contados a partir de la fecha en que se tomó el acuerdo o determinación a impugnarse, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación.

**C.**

Con respecto a los elementos comunes del inmueble, el Artículo 17 de la Ley de Condominios, 31 LPRA sec. 1921p, dispone lo siguiente:

a) Se consideran elementos comunes generales necesarios, no susceptibles de propiedad individual por los titulares y sujetos a un régimen de indivisión forzosa, los siguientes:

[...]

(7) Un generador de energía eléctrica que supla la demanda de áreas comunes, o comunes y privadas, haciendo uso de infraestructura eléctrica del condominio, como un elemento común general. La instalación o cambio de un generador de energía eléctrica que supla la demanda de áreas comunes, o comunes y privadas, haciendo uso de infraestructura eléctrica del condominio será considerado como una obra necesaria.

[...]

(b) Se consideran elementos comunes generales, salvo disposición o estipulación en contrario los siguientes:

(1) El terreno, los sótanos, azoteas, patios y jardines.

(2) Los locales destinados a alojamiento de porteros, oficiales de vigilancia, personal que presta servicios de limpieza y mantenimiento u otros, así como los locales destinados para almacenamiento conocidos como covachas.

(3) Las áreas destinadas a estacionamiento.

(4) Las áreas recreativas que excedan lo requerido por la reglamentación urbana o por las autoridades competentes.

**La adjudicación de las áreas o elementos comunes antes enumerados, requerirá que así se haya dispuesto en la escritura de constitución del régimen. De realizarse la conversión y transferencia al régimen de propiedad horizontal, luego de constituida la escritura matriz, se requerirá el consentimiento de dos terceras partes (2/3) de todos los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes. La transferencia deberá inscribirse en el Registro de la Propiedad, dejando constancia de los nuevos porcentajes de participación para cada uno de los apartamentos beneficiados.**

Por otro lado, el Art. 18 de la Ley de Condominios, 31 LPRA sec. 1921q estatuye que,

**Las obras necesarias para la conservación o seguridad del inmueble y para el uso eficaz de los elementos comunes serán acordadas por la mayoría de los titulares.** Si las de uso eficaz menoscabasen el disfrute de algún titular en particular, éstas no podrán realizarse sin el consentimiento del titular afectado. La objeción del titular afectado deberá estar fundamentada. Para toda otra obra que afecte en forma adversa los elementos comunes del inmueble se requerirá el consentimiento de dos terceras partes (2/3) de los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes. No se podrá realizar obra alguna que afecte la solidez y estructura del edificio.

En otros términos, el Art 3 de la Ley de Condominios, define obra de mejora como "toda obra permanente que no sea de mantenimiento, dirigida a aumentar el valor o la productividad de la propiedad en cuestión o a proveer mejores servicios para el disfrute de los apartamentos o de las áreas comunes". En esa línea, el Art. 49 de la Ley de Condominios, 31 LPRA sec. 1922u, dispone que le corresponde al Consejo de Titulares aprobar la ejecución de obras extraordinarias y mejoras. Asimismo, las obras de mejoras podrán realizarse si se constituye dos terceras (2/3) partes de los titulares que a su vez reúnan dos terceras (2/3) partes de las áreas comunes, salvo que sea una derrama en la que se requerirá la votación unánime de los votos.

### III.

Por estar relacionados el primer, segundo y tercer señalamiento de error, los discutiremos en conjunto.

En esencia, la parte recurrente sostiene que el DACO erró en resolver que esta no acreditó que el Condominio Oceanía estaba sometido al Régimen de Propiedad Horizontal. Ello, toda vez que en la *Contestación a la Querella,* el Consejo admitió que el mencionado condominio consta sometido al Régimen de Propiedad Horizontal. Asimismo, la recurrente alega que el DACO incidió en no admitir la

porción de la escritura matriz que define el "cuarto de máquinas" como un elemento común y, a su vez, el cambio de destino del "cuarto de máquinas" debió ser aprobado de forma unánime.

Sabido es que debemos brindarle deferencia a las determinaciones de hechos que esbozan las agencias administrativas. En reiteradas ocasiones, este Tribunal ha resuelto que no intervendremos en las determinaciones de hecho de una agencia salvo que si la determinación administrativa no está basada en evidencia sustancial; el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o la actuación administrativa lesionó derechos constitucionales fundamentales. De lo contrario, debemos abstenernos en modificar las determinaciones de hechos que formule la agencia toda vez que el foro administrativo evaluó la prueba desfilada ante su consideración.

Luego de un examen sosegado del expediente, resolvemos que no intervendremos en las determinaciones de hechos esbozadas por el DACO dado que no se configuran las circunstancias previamente descritas que nos autorizan a intervenir en los méritos de las determinaciones de hechos. Consta de la prueba que la parte recurrente no presentó la totalidad de la escritura matriz para que el DACO pudiera adjudicar los méritos de la controversia. Surge de las determinaciones de hechos que, el DACO resolvió que el Condominio Oceanía está sometido al Régimen de Propiedad Horizontal. Sin embargo, la recurrente no presentó las porciones pertinentes de la escritura matriz para que el DACO determinara que el "cuarto de máquinas" constituía un elemento común y, fue alterado el destino de dicho elemento común. No obstante, el Consejo no alteró el destino del cuarto de máquinas. El recurrido

llevó a votación el reservar un espacio designado para una oficina. Contrario a lo alegado por la recurrente, para alterar la finalidad de un elemento común no tiene que ser aprobado de manera unánime, basta con que dos terceras (2/3) partes de los titulares voten a favor del cambio de destino. Así pues, resolvemos que el DACO no incidió en los señalamientos de error formulados por la recurrente.

Por otro lado, la recurrente sostuvo en su cuarto señalamiento de error que, el Consejo no demostró, con prueba documental, que cumplió con su obligación de evaluar la instalación del generador eléctrico. Ello, debido a que no tomó las medidas de seguridad necesarias para garantizar que el generador eléctrico estuviera ubicado en un lugar que no afecte a los titulares. Asimismo, arguyó que el lugar en el que se encuentra localizado el generador eléctrico constituyó un cambio de fachada.

Conforme a lo dispuesto en el Art. 17 de la Ley de Condominios, supra, un generador eléctrico constituye un elemento común si suple la energía a las áreas comunes. En esa línea, el Art. 18 del citado estatuto establece que, un elemento común que afecte de forma adversa los elementos comunes del inmueble será aprobado por dos terceras (2/3) partes de los titulares.

En el caso ante nos, el Consejo obtuvo la aprobación unánime para instalar una planta eléctrica con el fin de proveer energía al condominio. Así pues, obtuvo la aprobación de los titulares conforme la Ley de Condominios, supra, para colocar el generador eléctrico en el lugar propuesto. A su vez, en la Determinación de Hecho Número Quince (15), el DACO determinó que la parte recurrente obtuvo la aprobación de la Oficina de Gerencia y Presupuesto, Departamento de Recursos Naturales y la Junta de Calidad Ambiental para la ubicación de la planta eléctrica. Además, la recurrente no expuso ante el DACO en qué manera la ubicación del generador eléctrico alteró la fachada del Condominio. Por ende,

no estamos en posición para alterar la determinación del DACO y, por tanto, la agencia administrativa no cometió el cuarto error.

Finalmente, procederemos a discutir el quinto, sexto y séptimo señalamiento de error que, por estar relacionados, los discutiremos en conjunto.

En los señalamientos de error que discutiremos, la recurrente alegó que la construcción de la verja, en el área de la piscina, constituyó un cambio en la fachada del condominio. Por tal razón, la recurrente argumentó que dicha construcción no fue aprobada con los votos requeridos a tenor con la Ley de Condominios, supra. Igualmente, adujo que, la derrama no fue aprobada con el aval de votos necesarios según la Ley de Condominios, supra.

Conforme a las normas jurídicas pormenorizadas, las obras de mejoras son aquellas dirigidas para aumentar el valor o proveer un mejor servicio para el disfrute de las áreas comunes. Cónsono con lo anterior, las obras de mejoras deben ser aprobadas por dos terceras (2/3) partes de los titulares; de lo contrario no puede llevarse a cabo la obra de mejora. No obstante, de acuerdo con el Art. 65 de la Ley de Condominios, supra, un titular puede impugnar un acuerdo del Consejo de Titulares o la Junta de Directores si es contrario a la ley, reglamento o escritura matriz y estuvo presente en la asamblea.

Como corolario de lo anterior, el Consejo aprobó ejecutar una construcción para arreglar una verja deteriorada que se encontraba en el área de la piscina. Según el recurrido, dicha verja constituía un riesgo para la seguridad de los titulares y visitantes del condominio. Asimismo, consta en el expediente y en las determinaciones de hecho de la *Resolución* recurrida que, la obra de mejora fue aprobada por más de dos terceras (2/3) partes de los titulares.

No obstante, la recurrente no votó en contra de los acuerdos aprobados. La recurrente tampoco mostró su oposición con los votos que surgían en la Minuta de la Asamblea. Por ende, concurrimos con el DACO en que la recurrente está impedida de impugnar la aprobación de la derrama y construcción de la verja debido a que no votó en contra de estos acuerdos.

Con ello, reiteramos nuestra determinación en que, estamos impedidos de intervenir en las determinaciones de hechos de la agencia administrativa y resolver contrario al DACO.

En mérito de lo antes expuesto, sostenemos la determinación de la agencia recurrida. Nada en el expediente de autos sugiere que el pronunciamiento que atendemos haya resultado en un ejercicio arbitrario atribuible al DACO. Por tanto, en ausencia de prueba al contrario, confirmamos la *Resolución* recurrida.

**IV.**

Por los fundamentos que anteceden, confirmamos la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones